IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERRENCE DAMES,<br><br>    Petitioner,<br><br>vs.<br><br>SUPERINTENDENT, Green Haven Correctional Facility,<br><br>    Respondent. | No. 9:16-cv-01172-JKS<br><br>MEMORANDUM DECISION |

  Terrence Dames, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Dames is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Green Haven Correctional Facility. Respondent has answered the Petition, and Dames has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On November 1, 2011, Dames was charged with second-degree murder, fourth-degree criminal possession of a weapon, false personation, and second-degree forgery. Roughly three months later, Dames appeared with counsel for a scheduled suppression hearing pursuant to *Huntley*[1] and *Wade*.[2] Before the suppression hearing began, counsel informed the court that Dames had agreed to accept a plea offered by the prosecution. Under the terms of the

---

  1  *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

  2  *United States v. Wade*, 388 U.S. 218 (1967). The term "*Wade* hearing" is a shorthand reference to a hearing to determine whether a defendant's right to counsel at an identification procedure was honored.

agreement, Dames would plead guilty to a single count of first-degree manslaughter and waive any right to appeal, in exchange for an agreed-upon sentence of 24 years' imprisonment followed by 5 years of post-release supervision.[1]

The trial judge addressed Dames:

> You told me Monday that you did not want to accept that offer, and I'm not going to play any games with you. If you want to plead guilty, I will accept your plea, but you are not going to tell me I want to plead today and then take it back tomorrow and then plead again and then take it back. If you plead guilty, this case is over. You will not, I repeat not, be able to come back here and tell me I've changed my mind, I want a trial.

Docket No. 17 at 152-53.

Dames replied, "I understand, your Honor." *Id.* The Court then went over the plea agreement with Dames and asked if he had any questions. He had one regarding payment of the fine. He said he had no other questions. *Id.* at 154.

During the plea hearing, Dames acknowledged that pleading guilty is the same as being found guilty after a trial; that by pleading guilty he gave up the right to a trial at which the government would have to prove his guilt of each charge beyond a reasonable doubt; that he gave up the right to testify, if he chose to do so, and to call witnesses on his behalf; that he understood and agreed to waive his right to appeal on condition that he would be sentenced according to the plea agreement; and he understood that waiving his right to appeal meant that his case was over apart from sentencing. Dames also admitted, after some hesitation, that he

---

[1] Based on the second-degree murder charge, Dames was facing a potential sentence of up to life imprisonment if he went to trial. *See* NEW YORK PENAL LAW §§ 70.00(2)(a), 70.00(3)(a)(i), 125.25, (second-degree murder is a class A-1 felony subject to a minimum term of 15 years and a maximum term of life imprisonment).

2

caused the death of Steven LaPoint. He confirmed that he wanted to plead guilty to first-degree manslaughter and avoid a trial for second-degree murder. *Id.* at 157-163.

In order to establish an evidentiary basis for the plea, the judge asked Dames what happened. Dames replied that, in the early morning hours, he was on a street in Rome, New York, in a crowd that included LaPoint and his brother. The brother said "something pretty racial," and Dames walked away. When Dames, who was then unarmed, turned around, LaPoint was running at him, brandishing a weapon (apparently a knife). After a struggle, Dames obtained possession of the knife from LaPoint and stabbed him. Dames then fled, still in possession of the knife, which he threw into the canal during his flight. Dames later learned that he had stabbed LaPoint four times.

The judge then told Dames:

> I'm not going to accept your plea. I'm not going to have you tell me it was justified and you were just fighting back. I cannot do it. Unless you are prepared to tell me, under oath, that you had the knife, that you intended to cause serious physical injury to him, and you stabbed him and you killed him, I'm not accepting your plea. We are going to bring in the officers and start the [suppression] hearing."

*Id.* at 161.

At this point, Dames admitted he had the knife, that LaPoint never had a knife, and that Dames stabbed LaPoint four times and then ran away and threw the knife in the canal. *Id.* at 159-164. The trial court asked him, "And you're sure this is what you want to do, you want to plead guilty to manslaughter in the first degree and avoid a trial for murder in the second degree?" Dames answered in the affirmative. *Id.* at 165. Dames also agreed when specifically asked whether he understood that, by pleading guilty, he was giving up the right to claim self-defense, intoxication, or any other defense. *Id.* at 166.

3

The court then asked defense counsel David Cook to outline for the record the time he spent discussing the plea with Dames. Cooke stated that, in preparation for the suppression hearing, the plea, and the eventual trial, he and his colleagues in the Public Defender's Office had discussed the case at length with Dames. Cooke also asserted that the plea agreement "was a fair offer and probably the best we could attain, given the circumstances." Cook further determined, after discussion with his supervisors and colleagues, that the plea offer was a good disposition and in Dames' best interest. *Id.* at 165-66. While Cooke acknowledged that first-degree manslaughter was a lesser-included offense of the murder charge and thus a possible verdict, in his opinion, Cook believed that a murder verdict was a more likely result. *Id.* at 168.

Dames then appeared for sentencing on April 16, 2012, at which time he orally attempted to withdraw his guilty plea. Dames denied that he had intentionally killed LaPoint, and instead insisted that he had acted in self defense. He stated, "I was coerced into taking that plea against my nature, under duress." Dames accused Cooke of ineffective assistance of counsel because he failed to respond to Dames' motions and letters or provide him with discovery. According to Dames, Cooke pressured Dames into taking the plea agreement and told him that he would not get a fair trial. *Id.* at 172-78.

Cooke responded:

> [Dames] had a copy of everything I had. I never told him he couldn't get a fair trial. The plea was based upon the risks of trial and the fact that the offer was a reduction from murder to manslaughter which took life off the end. And other than that, it's an agreed-upon sentence.

*Id.* at 178-79.

Dames replied, "You informed me that I would not get a fair trial . . . [b]y telling me you don't want to get me life." *Id.* at 179.

4

The court denied Dames' oral motion to withdraw his plea and imposed a sentence of 24 years' imprisonment and 5 years of post-release supervision in accordance with the plea agreement. *Id.* at 172-80.

At Dames' request, another attorney in the Public Defender's Office, Patrick Marthage, was appointed to appeal Dames' conviction to the Fourth Judicial Department of the New York Supreme Court, Appellate Division. On appeal, Dames alleged that: 1) his appellate waiver was not made knowingly, voluntarily, or intelligently; 2) his guilty plea was not made knowingly, voluntarily, or intelligently; and 3) his sentence of 24 years' imprisonment was excessive. *Id.* at 60-72. The Appellate Division unanimously affirmed the judgment against Dames in a reasoned opinion issued on November 14, 2014:

> [Dames] appeals from a judgment convicting him upon his plea of guilty of manslaughter in the first degree (Penal Law § 125.20[1]). Contrary to Dames' contention, his waiver of the right to appeal was knowingly, voluntarily, and intelligently entered (*see People v. Lopez,* 6 NY3d 248, 256; *People v. Barber*, 117 AD3d 1430, 1430; *People v. Durodoye*, 113 AD3d 1130, 1131). The record establishes that "[Dames] understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty"(*Barber,* 117 AD3d at 1430). Although [Dames'] contention that his guilty plea was not knowing, voluntary, and intelligent survives the waiver of the right to appeal and is preserved for our review by his motion to withdraw the plea (*cf. id.* at 1430-1431), it is without merit. His assertions at sentencing that he was innocent, under duress, and coerced into taking the plea were belied by the statements he made during the plea colloquy (*see People v. Leach*, 119 AD3d 1429,1430; *People v. Williams*, 90 AD3d 1546, 1547, *lv denied* 19 NY3d 978). The valid waiver by [Dames] of the right to appeal encompasses his challenges to the severity of the sentence. (*See Lopez*, 6 NY3d at 256; *People v. Hidalgo,* 91 NY2d 733, 737).

*People v. Dames*, 994 N.Y.S.2d 758, 759 (N.Y. App. Div. 2014).

Dames sought leave to appeal in the New York Court of Appeals, which was summarily denied on June 3, 2015. *People v. Dames*, 36 N.E.3d 97, 97 (N.Y. 2015).

Prior to litigating his appeal, Dames also moved *pro se* to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the grounds that trial counsel operated under a conflict of interest when at sentencing he opposed Dames' claims of coercion. Docket No. 17 at 3-52. The trial court denied the motion, concluding that the case was on appeal and that all of Dames' claims could be addressed on the existing record, including the plea entry and sentencing transcripts. *Id.* at 56-59.

Dames filed a *pro se* Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254 on September 22, 2016.[2] Docket No. 1 ("Petition").

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Dames first challenges his plea as not knowing, voluntary or intelligent. Dames next avers that his sentence of 24 years' imprisonment is excessive. Finally, Dames contends in Grounds 3 and 4 that he received ineffective assistance from trial and appellate counsel, respectively.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[2] Although Dames asserts that his Petition is untimely, Docket No. 1 at 13-15, Respondent disagrees, Docket No. 16-1 at 10-11, n.2. Respondent concedes that, although the court denied Dames' CPL§ 440 motion on September 10, 2013, the District Attorney's office never served Dames with the order denying that motion. *Id.* In Respondent's view, because Dames was not served with notice of the denial, the time for him to appeal that order did not expire, and the limitations period was thus tolled from the date his conviction became final, September 1, 2015, until December 22, 2015, when he sought leave to appeal the denial of his CPL § 440 motion more than two years after its denial. *Id.* Dames filed the instant Petition on September 22, 2016, less than one year after the tolled limitations period commenced.

6

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Dames has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v.*

*Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).[3]

IV. DISCUSSION

As laid out above, Dames has made four claims in his § 2254 challenge to his state criminal conviction. On inspection, however, it is clear that all four claims effectively collapse into one claim: that the state court violated Dames' Sixth Amendment right to counsel, made applicable to the states by the Fourteenth Amendment, by denying his motion to set aside his guilty plea, which he asserts was coerced by Cooke and the product of duress and therefore not knowing, intelligent and voluntary. Dames reasons that his attorney created a conflict of interest by failing to support Dames in setting aside his plea, and effectively abandoned him at sentencing by denying Dames' coercion claims. In Dames' view, he was without counsel at that point, and the trial judge was obligated to appoint conflict counsel and hold a hearing to consider Dames' claims.

The last reasoned decision by the New York courts was the November 14, 2014, decision of the Appellate Division, which is set out above. *Dames*, 994 N.Y.S.2d at 759; *see Hines v.*

---

[3] Where a petitioner alleges a fact in his petition and the respondent contradicts that allegation in the response or answer, there is no need to file a traverse to that fact; the matter will be resolved by a consideration of the evidence. *See* Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and accompanying commentary (citing *Stewart v. Overholser*, 186 F.2d 339 (D.C. Cir. 1950) ( no traverse required when a factual issue has been clearly framed by the petition and the return)). Where, however, the answer alleges a fact that is not addressed in the Petition, the petitioner must either file a reply contesting the fact (or, if permitted, introduce evidence) or the allegation in the answer will be accepted as true. For example, the response states that Dames was 27 at the time of his offense. Dames does not mention his age in the Petition and certainly knows what it is. If he disagreed with the answer, he would be expected to reply. *Catalano*, 197 F.2d at 66-67.

*Miller*, 318 F.3d 157, 160-61 (2d Cir. 2003) (decision is on the merits if merits addressed as opposed to a decision on procedural or other grounds). Where, as here, a state court adjudicates a claim on the merits, this Court is required to apply AEDPA deference to that state court ruling. 28 U.S.C. § 2254(d)(1)-(2). This Court is thus required to evaluate the instant Petition under the standards set out in 28 U.S.C. § 2254 (d)(1) and (d)(2) and in accordance with the decisions of the United States Supreme Court interpreting that statute.

Dames cites no decisions of the United States Supreme Court in his Petition. There is no decision of the Supreme Court with facts materially indistinguishable from this case. *See Hines v. Miller,* 318 F.3d 157, 163-64 (2d Cir. 2003) (recognizing that the Supreme Court "has never specifically addressed a claim such as the one before us, nor has it stated how such a claim should be analyzed, i.e., as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea"). This Court's research has not uncovered any Supreme Court case since 2003 specifically addressing these issues.

While Dames does not cite *Lopez v. Scully,* 58 F.3d 38 (2d Cir. 1995) (holding that habeas petitioner's Sixth Amendment right to counsel was violated due to attorney's actual conflict of interest and was entitled to re-sentencing in state court with new counsel), his arguments are very similar to the arguments made and sustained in that case.[4] But "circuit

---

[4] *Lopez* originated in New York state court and reached the Second Circuit on appeal from the District Court's denial in a § 2254 proceeding. Cases reach the Second Circuit from the District Court when a defendant appeals from a conviction for a violation of federal law or appeals from a denial of a 28 U.S.C. § 2255 motion to vacate a federal conviction. Illustrative are cases raising similar issues to those raised by Dames. *See, e.g., United States v. Davis,* 239 F.3d 283 (2d Cir. 2001); *United States v. Moree,* 220 F.3d 65 (2d Cir. 2000); and *United States v. White*, 174 F.2d 290 (2d Cir. 1999). Such decisions may be persuasive in their interpretations of U.S. Supreme Court authority, but they are not controlling. In contrast, where the Second Circuit applies AEDPA in a § 2254 proceeding and determines what law has been clearly

precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' It therefore cannot form the basis for habeas relief under AEDPA." *See Parker v. Matthews*, 567 U.S. 37, 48 (2012) (citation omitted). A Second Circuit habeas petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent. *See Yung v. Walker,* 341 F.3d 104, 110 (2d Cir. 2003). Indeed*, Lopez* involved crimes committed in 1982 and was decided on June 22, 1995, before the adoption of AEDPA on April 24, 1996. *See Woodford v. Garceau*, 538 U.S. 202, 205-06 (2000) (where a habeas proceeding is commenced in district court before the effective date of AEDPA, pre-AEDPA law governs).

Moreover, in the years since *Lopez* was issued, the United States Supreme Court has decided a number of cases that contribute to the "clearly-established federal law" that will govern this decision. In *Lafler v. Cooper*, 566 U.S. 156 (2012), *Missouri v. Frye*, 566 U.S. 134 (2012), and *Padilla v. Kentucky,* 559 U.S. 356 (2010), the Court identified plea negotiations and the entry of a plea as critical stages of a criminal trial during which a defendant is entitled to the effective assistance of counsel. Generally, claims of ineffective assistance of counsel ("IAC") are governed by the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to prove that counsel's representation fell below an objective standard of reasonableness, and that counsel's failure prejudiced him or her, *i.e.*, but for counsel's unprofessional errors, the result would have been different (in context, more favorable to the defendant). In evaluating counsel's performance, attention is paid not only to the advice given

---

established by the U.S. Supreme Court, those decisions may be binding, and thus may be binding in this proceeding. *See*, *e.g.*, *Tueros v. Greiner*, 343 F.3d 587 (2d Cir. 2003); *Hines v. Miller*, 318 F.3d 157 (2d Cir. 2003).

11

but also to any omissions in the advice that would be required by the circumstances. Where it is alleged that unprofessional advice led the defendant to enter an improvident guilty plea, the defendant must show that, but for the bad advice, he would have gone to trial and not pled guilty. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).[5]

There is, however, an exception to the dual *Strickland* burden borne by a defendant alleging ineffective assistance of counsel to prove unreasonable performance of the attorney's duties and resulting prejudice in connection with entry of a guilty plea. Where the petitioner alleges and proves that his attorney labored under an actual conflict of interest that adversely affected counsel's performance, prejudice may be presumed. *See Mickens v. Taylor*, 535 U.S. 162, 166-67(2001)*; Cuyler v. Sullivan,* 446 U.S. 335 (1980). The dividing line between IAC claims based upon *Sullivan,* in which prejudice is presumed, and those governed by *Strickland,* where a defendant must prove prejudice, has generated disagreements in the federal courts. Some courts contend that only multiple representation cases, *i.e.*, those in which defense counsel represents multiple defendants, are governed by *Sullivan* and all other IAC claims alleging a conflict of interest based upon conflicts between an attorney's personal interest and the client's interests are governed by *Strickland*. *See* discussion in *Tueros v. Greiner*, 343 F.3d at 593-94, and *Hines v. Miller*, 318 F.3d at 160-164. Of course, if only multiple representation may trigger a presumption of prejudice, then *Sullivan* disappears from this case and only *Strickland* must be considered.

---

[5] Dames does not contend, nor is there support in the record, that, had Dames not accepted the agreement which led to his guilty plea, the prosecution would have made a new offer more favorable to Dames.

For purposes of this case, the Court assumes, without deciding, that an actual conflict of interest requiring a presumption of prejudice might in some circumstances exist in the absence of multiple representation and extend to situations in which a defendant establishes: 1) an actual conflict of interest where "the attorney's and defendant's interest diverged with respect to a material factual or legal issue or to a course of action;" 2) a lapse in representation demonstrated by the existence of "some plausible alternative strategy not taken up by Counsel;" and 3) "the alternative defense strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000) (citations omitted).

The trial court denied Dames' motion to vacate, concluding that Dames' claims could be decided on the record. On appeal, the Appellate Division agreed and concluded that an evidentiary hearing was unnecessary because the record established that Dames' claims were without merit. Dames' Petition therefore turns on whether the state court's conclusion that Dames' claims were refuted by the existing record resulted in conflict with, or an unreasonable interpretation of, clearly-established federal law or an unreasonable determination of the facts. Both New York and federal law agree that, if the record refutes the habeas petitioner's factual allegations or otherwise precludes habeas relief, a federal court is not required to hold an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Hines v. Miller,* 318 F.3d 157, 162-63 (2d Cir.), *cert.denied*, 538 U.S. 1040 (2003). Thus, it is necessary to consider the plea entry and sentencing transcripts (with particular attention to Dames' comments at sentencing) and compare them against the claims made in Dames' Petition to determine whether the record refutes the claims made in the Petition.

The ultimate question is, given the deference owed the state court decisions, was the conclusion denying Dames' efforts to withdraw his plea "reasonable"? In the course of deciding that question, and again applying the required deference, we face two subordinate questions: 1) whether Dames' complaints at sentencing required the trial court to question him further to flesh out his complaints; and 2) whether Dames' complaints required the appointment of conflict counsel and an evidentiary hearing to further develop the record.

Dames did not bring up coercion by counsel at the hearing in which he entered his plea. Under New York law, failure to raise such a claim at the time a guilty plea was entered precludes relief on appeal because a sentencing judge should be allowed to rely on the record regarding whether promises or threats were made. *People v. Ramos*, 468 N.E.2d 640, 642-43 (N.Y. 1984).[6] When asked if anyone threatened him in order to persuade him to plea, Dames answered no under oath. The Supreme Court has held that solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Maher,* 108 F.3d 1513, 1529 (2d Cir. 1997); *United States v. Gonzalez,*, 970 F.2d 1100, 1100-01 (2d Cir. 1992).

Of course, if the motion is supported by specifics that serve to particularize his claims of coercion under circumstances that might excuse his denying those claims falsely under oath, the defendant might be entitled to a hearing and the appointment of conflict counsel. Dames alleges

---

[6] The New York Court of Appeals, like the Second Circuit, prefers that IAC claims be brought in a collateral proceeding. *See Ramos*, 468 N.E.2d at 643.

that his plea was coerced. But the Second Circuit has held that the mere accusation of coercion is insufficient to create a conflict of interest. To trigger a hearing (and appointment of conflict free counsel), the claim of coercion must be particularized. *See United States v. Davis,* 239 F.3d 283, 286-288 (2d Cir. 2001). It would appear that the particularization should spell out the words, actions, or omissions that the petitioner claims were coercive and explain why he or she denied coercion when entering the plea. In *Davis*, the Court concluded that the petitioner's testimony that counsel's threat not to investigate his case and not to file pre-trial motions sufficiently particularized a coercion claim. *Id.* at 287. This might constitute abandonment and would explain why a layperson inexperienced in the law might succumb to counsel's demand and, despite his oath, tell the judge what he believed the judge wanted to hear.

But Dames did not particularize his claim of coercion here. He complained that counsel had not shared the discovery with him, but this kind of claim has been held insufficient to establish a conflict of interest. *See Moree*, 220 F.3d at 69. The only additional amplification was Cooke's alleged statement that "he didn't want to get [Dames] life [imprisonment]," Docket No. 17 at 179, which Dames interpreted as a statement that Dames could not get a fair trial. The state court could reasonably interpret this as simply counsel providing advice regarding the possible outcome if the case went to trial. *See Davis*, 239 F.3d at 287 (explaining that "defense counsel's perhaps honest assessment that Davis would be found guilty if he went to trial, and that failing to take the plea would result in Davis 'losing everything,' might constitute nothing more than competent advice").

The record reflects that Dames was offered two choices: 1) plead to manslaughter in return for a sentence of 24 years' imprisonment with 5 years of supervision; or 2) go to trial and

15

risk a murder conviction and a much longer sentence. Dames did not like either choice and apparently considered being confined to those two choices coercive. But the state court could reasonably conclude that explaining those two alternatives to Dames constituted effective assistance of counsel. *See Hines*, 318 F.3d at 165-166 (Walker, C.J., dissenting) (petitioner facing a "more or less inevitable" conviction may have "no doubt felt 'coerced,' . . . but that type of pressure does not invalidate a guilty plea").

The state court could also reasonably conclude that Dames' allocution under oath, in which he abandoned his earlier exculpatory comments, established a factual basis for the plea, and the transcript of the entry of plea provided all of the evidence necessary to find the plea knowing, intelligent and voluntary and to separately establish that the waiver of appeal was also knowing, intelligent and voluntary. The state courts could therefore find, consistent with *Schiro* and *Hines*, that the record refuted Dames' claims that his plea was coerced and that his attorney provided ineffective assistance of counsel as a result of an alleged conflict of interest. Thus, Dames is not entitled to a presumption of prejudice, appointment of conflict counsel, or an evidentiary hearing.

Dames also failed to particularize any claim under the dual burden of *Strickland*. 466 U.S. at 690 (a convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment). He complains that Cooke failed to bring motions, which are unidentified unless he is referring to his motion to set aside his plea, and it appears that motions were pending and a hearing scheduled at the time he agreed to plead guilty. Dames additionally complains that Cooke did not share discovery with him but also argues that he reviewed witness statements and

16

believes the evidence against him was not as strong as counsel indicated. He has not alleged facts that, if true, would establish that counsel's advice was not an honest expression of his professional opinion or was in anyway false or misleading. *Hill*, 474 U.S. at 59.

Under New York law, a misapprehension of the quality of the prosecution's case is not a basis to withdraw a plea. *See People v. Jones*, 375 N.E.2d 41, 44 (N.Y. 1978) ("A defendant is not entitled to withdraw his plea merely because he discovers that his calculus misapprehended the quality of the State's case.") (citation omitted). No U.S. Supreme Court case has adopted a specific rule to the contrary. It is undisputed that counsel and his colleagues at the Public Defender's Agency believed there was a serious risk of a murder conviction and conveyed that belief to Dames. The fact that Dames may, in hindsight, now have second thoughts or buyer's remorse is not proof of ineffective assistance of counsel or a basis to set aside a plea.

## V. CONCLUSION

It appears that Dames was told by his attorneys that he had two possible alternatives: 1) enter a plea to manslaughter and receive a guaranteed sentence of 20 years plus five years of supervision; or 2) go to trial and risk a likely murder conviction and a much longer sentence up to life imprisonment. No attorney can predict with certainty the outcome of a jury trial. Dames claims both *Sullivan* error and implicitly *Strickland* error but has not particularized either. His attorneys could only rely on their background, education, and experience to make an educated guess. They believed that the plea offered was the best Dames could expect. Cooke probably made this clear to Dames, leading him to feel coerced and that he could not receive a fair trial. Nevertheless, the state court did not act unreasonably in concluding that the record refuted Dames' claims of coercion and duress and established only that counsel gave Dames their best

17

professional judgment. Such a conclusion eliminated the need to appoint conflict counsel and hold an evidentiary hearing in state court, and those conclusions dispose of any right to the appointment of counsel or an evidentiary hearing in this Court.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). If Dames believes that reasonable jurists could disagree with this Court's denial of his claims, he may request a Certificate of Appealability from the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 5, 2019.

             /s/ James K. Singleton, Jr.
             JAMES K. SINGLETON, JR.
             Senior United States District Judge